UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THURMAN LILLY,
Individually and as a Personal
Representative of the Estate of
Sadie Mae Lilly,

               Plaintiff,               CIVIL ACTION NO. 09-11900

        v.                       DISTRICT JUDGE JOHN CORBETT O'MEARA

HARPER HOSPITAL               MAGISTRATE JUDGE VIRGINIA M. MORGAN
ASSOCIATES INCORPORATED
and JOHN DOE 1-4,

               Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

       This matter comes before the court on defendant Harper Hospital Associates Incorporated

("Harper Hospital")'s Motion to Dismiss and/or for Summary Judgment (D/E #12).  Plaintiff did

not file a response to Harper Hospital's Motion and the deadline for filing a response has passed

(D/E #13).  For the reasons discussed below, this court recommends that Harper Hospital's

motion be **GRANTED** and that Harper Hospital be granted summary judgment because of

plaintiff's lack of standing.  In the alternative, even if plaintiff should be found to have standing,

Harper Hospital's motion should be granted because plaintiff failed to state a claim upon which

relief can be granted and Harper Hospital is entitled to summary judgment as a matter of law.

-1-

This court also recommends that the John Doe defendants also be dismissed because, although they have neither been identified nor served, they would be entitled to judgment for the same reasons as Harper Hospital, *i.e.*, plaintiff's lack of standing and failure to state a claim upon which relief can be granted.

## II. Background

### A. Complaint

On May 19, 2009, plaintiff filed the complaint in this action (D/E #1).  According to that complaint, plaintiff is the son of Sadie Mae Lilly and he brings this action both individually and as the personal representative of the estate of Sadie Mae Lilly.  (Complaint, p. 1)  Plaintiff alleges that Sadie Mae Lilly was admitted to Harper Hospital on or about May 12, 2007 due to labored breathing, and that she received treatment in the emergency room for approximately eleven days.  (Complaint, ¶ 37)  Plaintiff also alleges that, on or about May 21, 2007, Sadie Mae Lilly was transferred from the emergency room to Harper Hospital's emergency extended care step-down unit, which is an inpatient twenty-four hour nursing care unit.  (Complaint, ¶ 39)  Plaintiff further alleges that, despite being under the total care of Harper Hospital's nursing staff in the step-down unit, including two of the John Doe defendants, Sadie Mae Lilly was found lying on the floor of her room on or about May 24, 2007, and that she was unconscious and unresponsive to attempts to wake her.  (Complaint, ¶¶ 44-45)

According to plaintiff's complaint, Sadie Mae Lilly was then transferred back to Harper Hospital's emergency room.  (Complaint, ¶¶ 22-23)  Plaintiff also alleges that, while in the emergency room, two of the John Doe defendants, who were attending physicians, refused to

-2-

order or perform the necessary screening to determine the extent of treatment required.

(Complaint, ¶ 25)  Plaintiff further alleges that those two John Doe defendants decided that Sadie

Mae Lilly was not worth saving because of her age and her history of medical problems.

(Complaint, ¶ 27)  According to plaintiff, those two John Doe defendants also deliberately

misrepresented Sadie Mae Lilly's condition and chance of survival in order to convince her

family that she would be a "vegetable" if she ever regained consciousness and that the expense

of her care would be enormous.  (Complaint, ¶ 28)  Plaintiff also asserts that the ploy of the two

John Doe attending physicians eventually worked and Sadie Mae Lilly's family eventually

agreed to discontinue artificial respiration.  (Complaint, ¶ 34)  Sadie Mae Lilly died seven hours

after the artificial respiration was terminated.  (Complaint, ¶ 35)

In Count I of the complaint, plaintiff alleges that defendants Harper Hospital and the two

John Doe attending physicians, acting in concert, violated the federal Emergency Treatment and

Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, by transferring Sadie Mae Lilly from the

emergency room to an extended care unit without doing the required screening of her emergency

condition.  (Complaint, ¶¶ 53-60)  In Count II, plaintiff alleges that the two John Doe nurses

committed medical malpractice under Michigan law, M.C.L. § 700.5 *et seq.*, by allowing Sadie

Mae Lilly to fall out of bed while in the step-down unit.  (Complaint, ¶¶ 61-66)  In Count III,

plaintiff alleges all of the defendants' actions led to the death of Sadie Mae Lilly and,

consequently, defendants violated Michigan's Wrongful Death Statute, M.C.L. § 600.2922 *et*

*seq.* (Complaint, ¶¶ 67-78)  In Count IV, plaintiff alleges that the two John Doe attending

physicians committed medical malpractice under Michigan law, M.C.L. § 700.5 *et seq.*, when

they deliberately misrepresented Sadie Mae Lilly's condition in order to "dump" their responsibility and the hospital's obligations.  (Complaint, ¶¶ 79-88)[1]

As relief, plaintiff seeks to recover $2.5 million for compensatory and exemplary damages.  (Complaint, ¶ 1)

### B. Motion Pending Before the Court

On September 11, 2009, defendant Harper Hospital filed the motion to dismiss and/or for summary judgment pending before the court (D/E #12).  In that motion, Harper Hospital argues that the claims against it should be barred because plaintiff lacks standing.  Harper Hospital also argues that plaintiff has failed to state a claim upon which relief can be granted and that, even if plaintiff did state such a claim, Harper Hospital would be entitled to summary judgment.

Plaintiff did not file a response to Harper Hospital's Motion and the deadline for filing a response has passed (D/E #13).

## III. Standards of Review

### A. Dismissal

Harper Hospital moves for dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Motions under Rule 12(b)(6) are to be brought by a defendant "before pleading," that is, before filing an answer to the complaint.  See Fed. R. Civ. P. 12(b)(6) ("A motion making any of these defenses shall be made before pleading if a further pleading is permitted.").  Here,

---

[1]The opening paragraph of the complaint also asserts that defendants violated the Americans with Disabilities Act ("ADA") and the Comprehensive Omnibus Budget Reconciliation Act ("COBRA"), but those two federal statutes are never mentioned again.

Harper Hospital has already answered the amended complaint (D/E #8, #9), so its motion cannot be brought pursuant to 12(b)(6).

Nevertheless, Harper Hospital can still move for dismissal on the basis that plaintiff failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(c) provides that, "[a]fter the pleadings are closed ... a party may move for judgment on the pleadings" and the Sixth Circuit has held that "where the substance of the motion is plain," it is proper to treat a motion styled as one under Rule 12(b)(6) as if it were brought under Rule 12(c), Wagner v. Higgins, 754 F.2d 186, 188 (6th Cir. 1984).

A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and judgment on the merits can be achieved by focusing on the content of the competing pleadings, attached exhibits, matters incorporated into the pleadings, and any facts of which the court may take judicial notice. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (2009). For a Rule 12(c) motion, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true and the motion may be granted only of the moving party is nevertheless clearly entitled to judgment. Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008). The court, however, need not accept as true legal conclusions or unwarranted factual inferences. Barany-Snyder v. Weiner, 539 F.3d 327, 332 (6th Cir. 2008). A Rule 12(c) motion is appropriately granted when no material issue of fact exists and the moving party is entitled to judgment as a matter of law. Tucker, 539 F.3d at 549. In this sense, it is similar to a motion under Rule 56(c). A motion under 12(c) is also analyzed similarly to a motion under Rule

12(b)(6), in that the outcome turns exclusively on the pleadings.  See Tucker, 539 F.3d at 550;

Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008).  Under Rule 12(h),

failure to state a claim upon which relief may be granted, may be raised by a motion under 12(c).

A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do.  Sensations, 526 F.3d at 295.  Factual allegations must be enough to raise a right to relief

above the speculative level.  Sensations, 526 F.3d at 295.

**B. Summary Judgment**

Harper Hospital moves for summary judgment pursuant to Fed. R. Civ. Pro. 56(b).  Fed.

R. Civ. Pro. 56(b) states that "[a] party against whom a claim, counterclaim, or cross-claim is

asserted or a declaratory judgment is sought may, at any time, move without or without

supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw

all reasonable inferences in favor of the non-movant.  See Matsushita Electric Industrial Co.,

Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also

B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001).  The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Once

-6-

the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. <u>Banks v. Wolfe County Bd. of Educ.</u>, 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of <u>fact</u> to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348 (<u>quoting</u> <u>First National Bank of Arizona v. Cities Service Co.</u>, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

**IV. Discussion**

 **A. Standing**

 Harper Hospital first argues that it is entitled to summary judgment because plaintiff lacks standing to bring this action. The elements of Article III standing are more than just pleading requirements. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Since plaintiff's standing is being challenged in a motion for summary judgment, plaintiff must, in the words of Fed. R. Civ.P. 56, "set forth specific facts," in affidavits or through other evidence, demonstrating that each element of standing is satisfied. <u>Center For Biological Diversity v. Lueckel</u>, 417 F.3d 532, 537 (6th Cir. 2005).

 Article III of the United States Constitution requires that parties attempting to invoke federal jurisdiction allege an actual case or controversy. <u>O'Shea v. Littleton</u>, 414 U.S. 488,

493-94, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); Flast v. Cohen, 392 U.S. 83, 94-101, 88 S.Ct.

1942, 20 L.Ed.2d 947 (1968). As explained by the Sixth Circuit:

> Article III of the United States Constitution limits the jurisdiction
> of federal courts to actual "Cases" and "Controversies." U.S.
> Const. art. III, § 2, cl. 1. To satisfy this "case-or-controversy"
> requirement, "a plaintiff must establish three elements: (1) an
> injury in fact that is concrete and particularized; (2) a connection
> between the injury and the conduct at issue-- the injury must be
> fairly traceable to the defendant's action; and (3) [a] likelihood that
> the injury would be redressed by a favorable decision of the
> Court."

Courtney v. Smith, 297 F.3d 455, 459 (6th Cir. 2002) (quoting Blachy v. Butcher, 221 F.3d 896,

909 (6th Cir .2000)) (alteration in Courtney); see also Friends of the Earth, Inc. v. Laidlaw Envtl.

Servs., Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); Lujan, 504 U.S. at

560, 112 S.Ct. 2130. "Injury-in-fact means that the plaintiff has 'sustained or is in immediate

danger of sustaining some direct injury.'" Airline Professionals Association of Intern. Broth. of

Teamsters, Local Union No. 1224, AFL-CIO v. Airborne, Inc., 332 F.3d 983, 986 -987 (6th Cir.

2003) (quoting Massachusetts v. Mellon, 262 U.S. 447, 448, 43 S.Ct. 597, 67 L.Ed. 1078

(1923)). "The injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"

O'Shea, 414 U.S. at 493-94, 94 S.Ct. 669.

Here, plaintiff brings this action on behalf of himself and as the representative of the

estate of Sadie Mae Lilly. However, plaintiff makes no allegations regarding any injury to

himself and there is no evidence suggesting any actual injuries to plaintiff. Furthermore, the

undisputed evidence demonstrates that plaintiff is not the personal representative of Sadie Mae

Lilly's estate. (Probate Records; attached as Exhibit B to Harper Hospital's Motion) Given that

plaintiff is not the personal representative of the estate, he lacks standing to bring his claims on

its behalf.  See 42 U.S.C. § 1395dd(d)(2)(A) ("[a]ny individual who suffers personal harm as a

direct result of a participating hospital's violation of a requirement of this section may, in a civil

action against the participating hospital, obtain those damages available for personal injury under

the law of the State in which the hospital is located, and such equitable relief as is appropriate.");

Moses v. Providence Hosp. and Medical Centers, Inc., 561 F.3d 573, 580 (6th Cir. 2009)

(discussing cases where the estate of the individual who suffered an actual personal injury brings

the EMTALA suit after the patient dies); M.C.L. § 600.2922(2) ("Every action for wrongful

death shall be brought by, and in the name of, the personal representative of the estate of the

deceased."); M.C.L. § 700.3703(3) ("Except as to a proceeding that does not survive the

decedent's death, a personal representative of a decedent domiciled in [Michigan] at death has

the same standing to sue and be sued in the courts of this state and the courts of another

jurisdiction as the decedent had immediately prior to death.")

### B. Plaintiff's Specific Claims

Harper Hospital also argues that plaintiff failed to state a claim upon which relief can be

granted and, even if he had stated a claim, Harper Hospital is entitled to summary judgment as a

matter of law on plaintiff's claims.  Plaintiff raised both federal and state claims in his amended

complaint and this court will address those claims separately.

### 1. Federal Claims

As noted above, while the opening paragraph of the amended complaint asserts that

defendants violated EMTALA, the ADA and COBRA, neither the ADA nor COBRA is ever

mentioned again and it is clear that plaintiff does not assert any claims under those two statutes. Therefore, plaintiff's sole federal claim is that defendants violated EMTALA.

For all hospitals that participate in Medicare and have an "emergency department," EMTALA imposes two requirements. <u>Moses</u>, 561 F.3d at 579.  First, for any individual who "comes to the emergency department" and requests treatment, the hospital must "provide for an appropriate medical screening examination ... to determine whether or not an emergency medical condition ... exists." 42 U.S.C. § 1395dd(a).  Second, if "the hospital determines that the individual has an emergency medical condition, the hospital must provide either (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility [.]"  § 1395dd(b).

Thus, EMTALA imposes an obligation on a hospital beyond simply admitting a patient with an emergency medical condition to an inpatient care unit.  <u>Moses</u>, 561 F.3d at 582.  The statute requires "such treatment as may be required to stabilize the medical condition," § 1395dd(b), and forbids the patient's release unless his condition has "been stabilized," § 1395dd(c)(1).  The statute defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in ... [ inter alia] placing the health of the individual ... in serious jeopardy[.]"  § 1395dd(e)(1)(A)(i).  A patient with an emergency medical condition is "stabilized" when "no material deterioration of the condition is likely, within reasonable medical probability, to result from or occur during" the

-10-

patient's release from the hospital. § 1395dd(e)(3)(B).  "Transfer" is defined in the statute to

include moving the patient to an outside facility or discharging him. § 1395dd(e)(4).  "Thus,

EMTALA requires a hospital to treat a patient with an emergency condition in such a way that,

upon the patient's release, no further deterioration of the condition is likely.  Moses, 561 F.3d at

582.  "In the case of most emergency conditions, it is unreasonable to believe that such treatment

could be provided by admitting the patient and then discharging him."  Moses, 561 F.3d at 582.

 The Sixth Circuit has recognized that Congressional concern that hospitals were

"dumping" patients with emergency medical conditions because they lacked insurance or other

means to pay their medical bills was the impetus for enacting EMTALA.  See Cleland v.

Bronson Health Care Group, Inc., 917 F.2d 266, 268 (6th Cir. 1990) ("[t]he only clear guidance

from the legislative history is that Congress intended to prevent hospitals from dumping patients

who suffered from an emergency medical condition because they lacked insurance to pay the

medical bills.").  See also Moses, 561 F.3d at 582; Thornton v. Southwest Detroit Hosp., 895

F.2d 1131, 1133 (6th Cir. 1990).

 More importantly, the Sixth Circuit has observed that "[a] cause of action under the

[EMTALA] is not analogous to a state medical malpractice claim."  Thornton, 895 F.2d at 1133.

See also, Cleland, 917 F.2d at 272 (where the court clarified that the EMTALA's language

precludes use of "a malpractice or other objective standard of care" for EMTALA medical

screening claims).  Other circuits have likewise determined that EMTALA is not a substitute for

state law malpractice actions.  See, e.g., Bryant v. Adventist Health System/West, 289 F.3d

1162, 1166 (9th Cir. 2002) ("EMTALA, however, was not enacted to establish a federal medical

malpractice cause of action nor to establish a national standard of care."); Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1137 (8th Cir. 1996) (en banc) ("So far as we can tell, every court that has considered EMTALA has disclaimed any notion that it creates a general federal cause of action for medical malpractice in emergency rooms."); Holcomb v. Monahan, 30 F.3d 116, 117 (11th Cir.1994) ("Section 1395dd(a) is not designed to redress a negligent diagnosis by the hospital; no federal malpractice claims are created."); Power v. Arlington Hospital Assoc., 42 F.3d 851, 856 (4th Cir. 1994) ("EMTALA is not a substitute for state law malpractice actions, and was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence.").

In this case, even reading plaintiff's *pro se* complaint liberally as the court must, Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir.1999) plaintiff's complaint does not state an EMTALA claim. According to that complaint, Sadie Mae Lilly was admitted to Harper Hospital's emergency room and continuously treated at the hospital until her death weeks later. Regardless of whether that treatment constituted malpractice, as plaintiff claims, there is no claim that Harper Hospital "dumped" Sadie Mae Lilly because she lacked insurance or other means to pay her medical bills. In fact, the complaint itself states that she was admitted and stabilized.. As discussed above, a cause of action under EMTALA is not analogous to a state medical malpractice claim and that act does not establish a national standard of care. Here, plaintiff has

-12-

only alleged a state medical malpractice claim and his purported EMTALA claim should be dismissed.[2]

To the extent plaintiff does state an EMTALA claim, the evidence submitted by Harper Hospital demonstrates that Sadie Mae Lilly was admitted to the hospital, stabilized, and treated until her death.  (Hospital Records; attached as Exhibit C to Harper Hospital's Motion)  Plaintiff does not dispute that evidence.  Therefore, there is no genuine issue of material fact with respect to any claim that Harper Hospital violated EMTALA and it would therefore be entitled to summary judgment on any such claim.

### 2. State Claims

As discussed above, plaintiff's sole federal claim should be dismissed.  Moreover, although the exercise of supplemental jurisdiction under 28 U.S.C. § 1367 is a matter of discretion, when a court properly dismisses a federal claim before trial, it customarily will dismiss the state-law claims as well-though without prejudice to their refiling in state court.  Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004).  Therefore, this court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss them from this action.

To the extent the court does exercise supplemental jurisdiction over plaintiff's state law claims, Harper Hospital correctly argues that plaintiff's complaint fails to state a claim for wrongful death medical malpractice because he failed to comply with the state of Michigan's

---

[2]With regard to the John Doe defendants, this court would also note that the Sixth Circuit has held that EMTALA does not authorize an action against individuals.  See Moses, 561 F.3d at 587.

procedural requirements for such a claim.  In Michigan, prior to commencing an action for medical malpractice, a plaintiff must  give the health professional or health facility written notice not less than 182 days before the action is commenced.  M.C.L. § 600.2912b(1).  Here, plaintiff's complaint fails to allege that he gave such notice.  The state of Michigan also requires that

> the plaintiff in an action alleging medical malpractice or, if the plaintiff is represented by an attorney, the plaintiff's attorney shall file with the complaint an affidavit of merit signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169.  The affidavit of merit shall certify that the health professional has reviewed the notice and all medical records supplied to him or her by the plaintiff's attorney concerning the allegations contained in the notice and shall contain a statement of each of the following:
>
> (a) The applicable standard of practice or care.
>
> (b) The health professional's opinion that the applicable standard of practice or care was breached by the health professional or health facility receiving the notice.
>
> (c) The actions that should have been taken or omitted by the health professional or health facility in order to have complied with the applicable standard of practice or care.
>
> (d) The manner in which the breach of the standard of practice or care was the proximate cause of the injury alleged in the notice.

M.C.L. § 2912d(1).  Here, plaintiff's complaint was not accompanied by an affidavit of merit.

Plaintiff did not file a response to Harper Hospital's motion and, given his failure to file an affidavit of merit or notice of intent to file suit, he has failed to state a claim for wrongful death medical practice upon which relief can be granted.

-14-

**V. Conclusion**

For the reasons discussed above, the court recommends that Harper Hospital's motion be **GRANTED** and that Harper Hospital be granted summary judgment because of plaintiff's lack of standing and the case be dismissed.[3]  This court also recommends that the John Doe defendants also be dismissed because, although they have neither been identified nor served, they would be entitled to judgment for the same reasons as Harper Hospital.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

---

[3]In the alternative, if plaintiff does have standing, this court recommends that Harper Hospital's motion be granted because plaintiff failed to state a claim upon which relief can be granted and, even if he had stated a claim, Harper Hospital is entitled to summary judgment as a matter of law on plaintiff's claims.

-15-

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.


S/Virginia M. Morgan                                      
Virginia M. Morgan
United States Magistrate Judge

Dated: December 3, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on December 3, 2009.

s/J. Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan